**Commonwealth v. Stewart**

C.P. of Lawrence County, nos. 483 of 2006, CR, 544 of 2006, CR.

*John J. Bongivengo, district attorney,* and *Thomas Minett, assistant district attorney,* for Commonwealth.
*Daniel S. Soom,* for defendant Stewart.
*Ralph D. Karsh,* for defendant Mercer.

MOTTO, *P.J.,* January 22, 2007—Before the court for disposition is the Commonwealth's petition for immunity orders requesting the court to issue an order granting immunity to defendants Kailin Stewart and Marlon Mercer, obligating them, under the protection of the immunity provided for by 42 Pa.C.S. §5947, to each testify in the proceeding against the other.

This case presents the question of whether the use of an immunity order as provided in 42 Pa.C.S. §5947 is consistent with the Pennsylvania constitutional privilege at Article 1, Section 9, against compelled self-incrimi-

nation. For the reasons that follow, this court finds that an immunity order granting each defendant use and derivative use immunity is consistent with the protection provided under our state constitution.

The facts of this case indicate that on March 20, 2006, in the city of New Castle, defendant Kailin Stewart was involved in a shooting with defendant Marlon Mercer. The Commonwealth alleges that Marlon Mercer fired at Kailin Stewart with a firearm. Kailin Stewart has stated that he fired his firearm at Marlon Mercer during the same episode. There were two persons apprehended arising from this "shoot-out": namely, Kailin Stewart and Marlon Mercer. Both defendants were charged with aggravated assault, in violation of 18 Pa.C.S. §2702(a)(1), and firearms not to be carried without a license, in violation of 18 Pa.C.S. §6106(a)(1). The aggravated assault charge against each defendant was withdrawn at the preliminary hearing and the Commonwealth has elected to proceed on the firearms not to be carried without a license charge against each defendant. The Commonwealth expects that both defendants will invoke their Fifth Amendment right against self-incrimination if they are called to testify against the other concerning the shooting. Accordingly, the Commonwealth, pursuant to 42 Pa.C.S. §5947, requested that this court enter an immunity order relative to Kailin Stewart obligating him, with the protection of use immunity, to testify against Marlon Mercer and, similarly, the Commonwealth seeks a comparable order relative to Marlon Mercer. It is alleged in both applications that it is the judgment of the district attorney that the testimony or other information from both defendants is necessary to the public interest, and that

both defendants had refused or were likely to refuse to testify or provide other information on the basis of the privilege against self-incrimination.

The applications were scheduled for a joint hearing and, after a number of continuances, the matter came before the court on October 11, 2006. Counsel for the Commonwealth and both defendants conferred and concluded that only a legal issue was presented: whether an immunity order, as provided for by 42 Pa.C.S. §5947, was constitutionally available where the Commonwealth sought to compel testimony from each of two defendants when they are both charged in the same incident. This conclusion was reached after counsel for both defendants agreed that the Commonwealth's applications were legally sufficient and that the Commonwealth could prove the allegations of the applications if a hearing was conducted.

42 Pa.C.S. §5947 provides in pertinent part:

"*Immunity of witnesses*

"(a) *General rule.*—Immunity orders shall be available under this section in all proceedings before:

"(1) Courts.

"(2) Grand juries.

"(3) Investigating grand juries.

"(4) The minor judiciary or coroners.

"(b) *Request and issuance.*—The attorney general or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the attorney general or district attorney:

"(1) the testimony or other information from a witness may be necessary to the public interest; and

"(2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

"(c) *Order to testify.*—Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding specified in subsection (a), and the person presiding at such proceeding communicates to the witness an immunity order, that witness may not refuse to testify based on his privilege against self-incrimination.

"(d) *Limitation on use.*—No testimony or other information compelled under an immunity order, or any information directly or indirectly derived from such testimony or other information, may be used against a witness in any criminal case, except that such information may be used:

"(1) in a prosecution under 18 Pa.C.S. §4902 (relating to perjury) or under 18 Pa.C.S. §4903 (relating to false swearing);

"(2) in a contempt proceeding for failure to comply with an immunity order; or

"(3) as evidence, where otherwise admissible, in any proceeding where the witness is not a criminal defendant." See 42 Pa.C.S. §5947.

The defendants in this case argue that the immunity statue which grants an immunized witness use and derivative use immunity offers insufficient safeguards in exchange for the considerable protection guaranteed under Article 1, Section 9 of the Pennsylvania Constitu-

tion, which the immunized witness is forced to forsake. The defendants acknowledge that the United States Supreme Court has upheld use and derivative use immunity as sufficient protection under the Fifth Amendment to the United States Constitution in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653 (1972). They argue, however, that the Pennsylvania constitutional protection is broader and can only be satisfied by a grant of transactional immunity.

Article 1, Section 9, of the Pennsylvania Constitution reads as follows:

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or prosperity, unless by judgment of his peers or laws of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling to a person to give evidence against himself."

Generally three types of immunity are recognized. "Use" immunity provides immunity only for the testimony actually given pursuant to the order compelling said testimony. "Use and derivative use" immunity enlarges the scope of the grant to cover any information or leads that were derived from the actual testimony given under compulsion. Thus, under either "use" or "use and

derivative use" immunity, a prosecution against the witness is not foreclosed; any prosecution must, however, arise from evidence unrelated to the information which is derived from the witness' own mouth. "Transactional" immunity is the most expansive, as it in essence provides complete amnesty to the witness for any transactions which are revealed in the course of the compelled testimony. See *Kastigar v. United States, id.,* and *Commonwealth v. Johnson,* 507 Pa. 27, 487 A.2d 1320 (1985).

In *Kastigar,* the United States Supreme Court found use and derivative use immunity to adequately protect the privilege against compulsory self-incrimination contained within the Fifth Amendment. The court held that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. *Id.* at 453.

According to *Kastigar,* transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The United States Supreme Court held that the privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being forced to give testimony leading to the infliction of penalties affixed to criminal acts. *Id.*

The case of *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957 (1995), presented the first opportunity for the Pennsylvania Supreme Court to consider the consti-

tutionality of the 1978 revision of 42 Pa.C.S. §5947. The issue presented in *Swinehart* was stated by the court as "whether the use and derivative use immunity provided in 42 Pa.C.S. §5947 is consistent with the Pennsylvania constitutional privilege at Article 1, Section 9, against compelled self-incrimination."

In *Swinehart,* the defendant, Thomas DeBlase, was subpoenaed as a witness in the trial of his co-conspirator on a murder charge. The defendant was offered immunity pursuant to 42 Pa.C.S. §5947 to testify against his co-conspirator. He refused to testify against his co-conspirator and argued that only transactional immunity can truly protect a witness from later being condemned by his own words. *Id.* at 523, 664 A.2d at 668. He argued that the Pennsylvania Constitution provides broader protection than the United States Constitution and can only be satisfied by a grant of transactional immunity. The court found that the statute is consistent with the Pennsylvania constitutional protection and held that use and derivative use immunity is constitutionally sufficient and transactional immunity is not required.

The Pennsylvania Supreme Court went on to explain the policy consideration that underlies the use of "use" and "derivative use" immunity in criminal prosecutions. "[T]here is no dispute that immunization of a witness is a necessary, effective and ancient tool in law enforcement. As the United States Supreme Court stated in *Kastigar,* 'many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime.' . . . Thus, in order to serve justice an accommodation must be made, however, that arrangement should not place the 'witness' in

a better position as to possible criminal prosecution than he had previously enjoyed. A grant of immunity should protect the witness from prosecution through his own words, yet it should not be so broad that the witness is forever free from suffering the just consequences of his actions, if his actions can be proven by means other than his own words." *Swinehart,* 541 Pa. at 523-24, 664 A.2d at 968.

In the case sub judice, the defendants assert that they would be prejudiced because their testimony against the other defendant, provided under the immunity order, could provide a basis to pursue perjury charges against them if they were to testify differently during their own trial. While the Commonwealth relies heavily on *Swinehart* in support of its position that the application for immunity should be granted in this action, the defendants argue that *Swinehart* is not factually similar to the case at bar because the witness in *Swinehart,* DeBlase, was being forced to testify against his co-conspirator, and there are no allegations that there was any conspiracy with respect to the defendants in this case. The defense notes that the current charge pending against each defendant is firearms not to be carried without a license, and that forcing the defendants to testify in direct conflict with their privilege against self-incrimination would act to force them into the dilemma of not only self-accusation, but also perjury or contempt, which are both allowed by the statute.

*Swinehart* provides guidance to this court because the situation presented instantly is the type of situation discussed by the Pennsylvania Supreme Court in *Swinehart,* when it said:

"A grant of immunity should protect the witness from prosecution through his own words, yet it should not be so broad that the witness is forever free from suffering the just consequences of his actions, if his actions can be proven by means other than his own words." *Id.,* 541 Pa. at 524, 664 A.2d at 968.

Although in *Swinehart,* the witness DeBlase and defendant were charged with being co-conspirators in a murder, while here each defendant is not charged as a co-conspirator but are each charged with the identical offense arising out of the same incident, the distinction is without a difference. The constitutional concern raised by DeBlase in *Swinehart* is the same raised by the defendants in this case. DeBlase's argument was described by the court in *Swinehart* as follows:

"In fact in the instant case DeBlase argues that if forced to testify against his co-conspirator he will forever be caught within the web and his ability to receive a fair trial forever tainted. Specifically, the untraceable effects of his immunized testimony will impact upon the selection of his jury, the presentation of a defense, the ability to utilize character witnesses and infringe upon his decision to testify on his own behalf." *Swinehart,* 541 Pa. at 523, 664 A.2d at 968.

Despite the acknowledgement of the dilemma use/derivative use immunity presents to the witness charged in the same incident, the *Swinehart* court concluded that the practical consequences, otherwise known as the "web effect" created by immunizing a witness, should not tip the balance so far in favor of the witness that the Commonwealth is only left with the option of granting complete amnesty. *Swinehart,* 541 Pa. at 524, 664 A.2d at

968. Despite the practical concerns raised by the immunized witness, which are the same practical concerns raised sub judice, the Supreme Court in *Swinehart* read 42 Pa.C.S. §5947 to be constitutional and not violative of Article 1, Section 9 of the Pennsylvania Constitution.

For these reasons, this court finds that the Commonwealth's application for immunity order should be granted with respect to each defendant. While the court notes that each defendant is put into the precarious position of possibly subjecting himself to self-accusation, perjury or contempt, that alone is not enough to deny the application for immunity order pursuant to 42 Pa.C.S. §5947 if the requirements of the statute are otherwise met.

Both *Kastigar* and *Swinehart* clearly support the proposition that "use" and "derivative use" immunity are permitted within the boundaries of our state constitution and that it can best achieve the necessary balance between the right to protect a witness from giving evidence against himself and the right of the public to compel every person's testimony. Each defendant will be protected from being prosecuted by "his own words" compelled by an immunity order. That is all that is required by Article 1, Section 9 of the Pennsylvania Constitution. Accordingly, the applications for immunity order will be granted by separate order.

ORDER

And now, January 22, 2007, after hearing and consideration of the foregoing application for immunity order, the application is granted. Marlon Mercer is directed that

he may not refuse to testify based on his privilege against self-incrimination in this criminal action against Kailin Stewart.

No testimony or other information compelled under this immunity order, or any information directly or indirectly derived from such testimony or other information, may be used against the testifying person in any criminal case, except that such information may be used: in a prosecution relating to perjury or relating to false swearing, in a contempt proceeding for failure to comply with this immunity order, or as evidence, where otherwise admissible, in any proceeding where the testifying person is not a criminal defendant.

## ORDER

And now, January 22, 2007, after hearing and consideration of the foregoing application for immunity order, the application is granted. Kailin Stewart is directed that he may not refuse to testify based on his privilege against self-incrimination in this criminal action against Marlon Mercer.

No testimony or other information compelled under this immunity order, or any information directly or indirectly derived from such testimony or other information, may be used against the testifying person in any criminal case, except that such information may be used: in a prosecution relating to perjury or relating to false swearing, in a contempt proceeding for failure to comply with this immunity order, or as evidence, where otherwise admissible, in any proceeding where the testifying person is not a criminal defendant.